



08 CV 3727

PAUL, HASTINGS, JANOFSKY & WALKER LLP
Robert L. Sherman (RS 5520)
Margarita Bejerano (MB 5497)
Lisa Willis (LW 5704)
75 East 55th Street
New York, NY 10022
Telephone: (212) 318-6000
Facsimile: (212) 318-6847

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| L'ORÉAL USA CREATIVE, INC and L'ORÉAL USA, INC., <br><br> Plaintiffs, <br><br> ZOTOS INTERNATIONAL, INC., <br><br> Defendant. | Case No.: _____ <br><br> **COMPLAINT** |

Plaintiffs, L'Oréal USA Creative, Inc. and L'Oréal USA, Inc., (collectively "L'Oréal"), by their attorneys, Paul, Hastings, Janofsky & Walker LLP, as and for their complaint against defendant Zotos International, Inc. ("Zotos"), allege as follows:

**Nature of Action and Relief Sought**

1. L'Oréal seeks injunctive and monetary relief against Zotos' acts of trade dress infringement, dilution, unfair competition, false designation of origin and deceptive practices in violation of the U.S. Trademark Act, 15 U.S.C. §§ 1051 *et. seq.*, New York statutory and common law, and the law of every state in which Zotos does business.

2. L'Oréal, through its REDKEN brand and others, is among the most highly regarded producers of professional hair care products in the United States, with a long history of selling high quality products. Products sold under the REDKEN brand and identifiers include a wide variety of

hair care, color, texture and styling products. They are sold primarily to and through professional hair and beauty salons and professional beauty supply stores.

3. Zotos is a subsidiary of Shiseido, a company based in Japan, and also markets and sells a variety of hair related products. It too sells to consumers through professional hair and beauty salons and professional beauty supply stores.

4. Zotos has adopted and is using packaging and trade dress that is nearly identical to and is likely to cause confusion with L'Oréal's trade dress. Zotos' actions are deliberate, willful and designed to reap the benefits of L'Oréal's substantial investment in the research and development of its products and packaging, and to trade on and exploit the enormous goodwill, value and public recognition that L'Oréal has developed in its trade dress as a source identifier for its high quality, market-leading hair care products.

5. As shown in the photographs annexed hereto as Exhibit A, the trade dress adopted and used by Zotos mimics the overall trade dress as well as the individual elements of the distinctive trade dress used by L'Oréal. Zotos' copying is willful, intentional and malicious. The similarities include, but are not limited to, nearly identical: (i) bottle design that simulates a skycraper; (ii) color schemes and black bottle cap; (iii) font, design and layout; and (iv) commercial impression of New York City and New York City skyline.

6. Zotos' unlawful conduct is causing and will continue to cause serious and irreparable harm to L'Oréal. Consumers are likely to be confused as to the source of Zotos' products or as to a perceived affiliation, connection or permission received from L'Oréal that does not exist. Zotos' infringing activities are also likely to cause initial interest confusion. Such conduct, if not enjoined, will eviscerate the good will L'Oréal has spent nearly seven years cultivating and developing in its REDKEN brand through its distinctive trade dress.

## The Parties

7. L'Oréal USA Creative, Inc. is a corporation organized and existing under the laws of the State of Delaware. It is the owner of certain intellectual property rights of L'Oréal USA, Inc.'s various brand-divisions in the U.S., including the distinctive trade dress at issue herein.

8. L'Oréal USA, Inc. is a corporation organized under the laws of the State of Delaware and is the exclusive licensee of L'Oréal USA Creative, Inc. It markets cosmetics, perfumes and hair products throughout the United States, including its REDKEN products, composed of high-quality hair care, color, texture and styling products for sale to hair care professionals and salons for resale to consumers.

9. L'Oréal has a principal place of business at 575 Fifth Avenue, New York, New York 10017.

10. Upon information and belief, Zotos is a corporation organized and existing under the laws of the State of New York with a principal place of business at 100 Tokeneke Road, Darien, Connecticut 06820.

## Jurisdiction and Venue

11. This action for trade dress infringement, dilution, unfair competition, false designation of origin and deceptive acts and practices arises under 15 U.S.C. §§ 1051 *et. seq.* and/or under the statutory and common law of the State of New York and of every state in which Zotos does business. This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. §§ 1121 and 28 U.S.C. §§ 1331 and 1338, and has supplemental jurisdiction pursuant to 28 U.S.C. §§ 1367.

12. This court has personal jurisdiction over Zotos because, upon information and belief, Zotos is incorporated in the State of New York and does and transacts business in this district, and has purposely directed its activities to citizens and residents of this district.

13.   Venue is proper pursuant to 28 U.S.C. § 1391(b) and (c).

## Facts Common to All Claims

## The Design of L'Oréal's Distinctive Trade Dress

14.   Redken Laboratories, Inc. ("Redken") was founded in 1960. The company quickly became known as an innovator in the professional salon segment of the hair products business by introducing the concept of protein reconditioning and developing new protein-based products. As a result, salons now are able to provide customers with internal and long-term hair conditioning rather than merely camouflaging damaged hair.

15.   In 1993 Redken was acquired by L'Oréal USA, Inc.'s predecessor and now is now a leading professional brand marketed by L'Oréal USA, Inc.

16.   The REDKEN brand always has stood for, and continues to stand for, a professional hair products industry leader that produces and sells a full range of hair care, color, texture and styling products. Its mission continues to be the development of high performance, cutting-edge hair products. That unwavering commitment has helped make L'Oréal a pioneer and leader in hair product technology in the United States and abroad. The success L'Oréal has experienced is in part a result of dedication to and investment in superior scientific research and development of high quality and innovative formulas. L'Oréal has invested millions upon millions of dollars in product research and development for hair care products.

17.   Products bearing the REDKEN brand and identifiers are sold by authorized distributors to professional hair and beauty salons and professional beauty supply stores throughout the United States and in more than 30 countries. Consumers may purchase those products at participating salons that use and sell the products.

18.   In 1995, L'Oréal began developing a new line of professional hair products. Its research and development team spent approximately 36 months developing new formulations.

The final choice of ingredients was made after painstaking consideration of myriad chemical compounds and performance objectives based on extensive scientific research, development and consumer and market testing. L'Oréal invested more than $2,500,000 in the research and development of those products.

19. In 2000, in an effort to set its products apart from those of competitors, L'Oréal's design team spent 24 months designing a unique and distinctive trade dress that not only would identify L'Oréal as the source, but also would convey a rich, modern and vibrant image. L'Oréal's substantial design efforts, costing approximately $650,000, resulted in a unique and distinctive packaging, the key elements of which include, but are not limited to: (a) a bottle with sloping shoulders that simulates a skyscraper; (b) the use of a variety of vibrant colors for its bottles including, but not limited to, orange, copper-brown, green, red-burgundy and gold, each corresponding to a specific regimen or use; (c) black bottle caps; (d) unique font; (e) white lettering throughout the packaging; (f) specific and uniform collocation of elements on the front panel; and (g) creation of an impression and image of New York City (in the aggregate, the "Skyscraper Trade Dress"). A photograph of the Skyscraper Trade Dress is annexed hereto as Exhibit B.

20. L'Oréal's Skyscraper Trade Dress is non-functional, arbitrary, inherently distinctive and has acquired secondary meaning in the minds of consumers through substantially continuous and exclusive use for nearly seven years, as well as through unsolicited media attention, commercial success and substantial advertising and promotion.

21. L'Oréal products sold in commerce in the Skyscraper Trade Dress have become associated with high quality and extraordinary results. They have been widely advertised and promoted in print advertising to the trade, at hair industry and educational events and on the Web site, www.redken.com. Since 2002, L'Oréal has invested approximately $89,000,000 in promoting

and advertising its line of products sold in the Skyscraper Trade Dress, which has achieved great commercial success and consumer recognition.

22. In the minds of consumers, the Skyscraper Trade Dress stands for and identifies a single source of high quality hair care products. L'Oréal, through its continuous, exclusive and prolonged use of the Skyscraper Trade Dress, has developed substantial goodwill, value and recognition in the Skyscraper Trade Dress. Customers, potential customers and the trade recognize and associate the Skyscraper Trade Dress with high quality hair care, color, texture and styling goods originating with L'Oréal.

23. In 2002, L'Oréal launched its new product line in the Skyscraper Trade Dress. The products in that line are the leading and most popular products bearing the REDKEN brand, and have achieved a high level of commercial success, closely identified with and by the Skyscraper Trade Dress and the rich, modern and vibrant image that the Skyscraper Trade Dress conveys. Since the launch, those products have achieved critical renown including in the hair care industry, the press and among consumers. They have enjoyed a consistent level of popularity and success, and, despite the very competitive market, have helped L'Oréal remain a leader in the professional hair care industry. The line includes eleven variations of shampoos, conditioners and other treatments focused on specific cleansing, moisturizing, maintenance and styling objectives, packaged in the following colors:

    a. <u>Orange</u> – replenishes sun-exposed hair and scalp and provides UV protection.

    b. <u>Green</u> – provides volume for normal to fine hair and boosts body.

    c. <u>Copper-Brown</u> – provides smoothness for very dry, unruly hair.

    d. <u>Gold</u> – provides softness for dry, brittle hair.

LEGAL_US_E # 78730045.8

  e. <u>Yellow</u> – activates brilliance, clarifies color and reinforces strength in all types of blonde hair.

  f. <u>Sky-Blue</u> – provides light weight moisture for normal to dry hair without adding weight.

  g. <u>Red/Burgundy</u> – provides protection for color treated hair.

  h. <u>Royal Blue</u> – provides repair for chemically and mechanically distressed hair.

  i. <u>Mint Green</u> – provides moisture and definition for all types of curls.

  j. <u>White</u> – helps reduce flaking, irritation and itching.

  k. <u>Off-White</u> – clarifies and works to remove copper, iron, hard water minerals and styling product build-up in all hair types.

Of those highly successful variations, the following five have enjoyed a particularly high level of commercial success: (i) the replenishing after-sun shampoo and conditioner for sun exposed hair and scalp, packaged in orange bottles, which have generated gross sales in excess of $2,000,000 ; (ii) the shampoo and conditioner formulated to enrich and tame dry, coarse, unruly hair, packaged in copper-brown bottles, which have generated gross sales in excess of $26,000,000; (iii) the shampoo and award winning conditioner that provide bodifying strength and density, packaged in green bottles, which have generated gross sales in excess of $18,000,000; (iv) the shampoo and conditioner that provide protection for color treated hair, packaged in red/burgundy bottles, which have generated gross sales in excess of $64,000,000; and (v) the shampoo and conditioner that provide softness for dry, brittle hair, packaged in gold bottles, which have generated gross sales in excess of $16,000,000 (collectively, the "Best Selling REDKEN Brand Products").

  24. L'Oréal's entire line sold in the Skyscraper Trade Dress has enjoyed great sales growth since its introduction in 2002. In 2007 alone, total gross sales exceeded $78,000,000, by far

LEGAL_US_E # 78730045.8

the best-selling line bearing the REDKEN brand, representing the sale of more than 23,000,000 bottles. By way of comparison, in 2002, L'Oréal sold approximately 14,000,000 bottles in the Skyscraper Trade Dress and enjoyed gross sales of approximately $38,000,000. To date, the line has enjoyed aggregate gross sales of approximately $400,000,000, representing the sale of more than 134,000,000 bottles.

25. The products in L'Oréal's Skyscraper Trade Dress line are sold to the general public through professional hair and beauty salons and professional beauty supply stores at a suggested retail price of approximately $11.95 per bottle.

### Zotos and Its Infringing Trade Dress

26. On information and belief, near the end of 2007 Zotos began producing, selling or distributing in commerce in this district and throughout the United States hair care products (the "Zotos Products") in packaging and trade dress that is likely, indeed calculated, to cause confusion with the Skyscraper Trade Dress.

27. The trade dress used by Zotos (the "Infringing Trade Dress") incorporates nearly identical design elements to those of the Skyscraper Trade Dress.

28. Zotos' slavish copying of the Skyscraper Trade Dress is all the more apparent when closer scrutiny is given to the particular colors chosen by Zotos for its bottles. It is no accident that Zotos has adopted and is using bottles in nearly identical colors to those of the Best Selling REDKEN Brand Products. Additionally, Zotos is using the identical color/benefit combinations used by L'Oréal. Zotos uses:

    (i) orange bottles for a "moisturizing shampoo" that mimic L'Oréal's orange bottles for shampoo and conditioner that provide replenishment to sun exposed hair and scalp and which "help[] restore moisture."

(ii) red/burgundy bottles for a color care shampoo that mimic L'Oréal's red/burgundy bottles for shampoo and conditioner that provide protection for color treated hair;

(iii) copper-brown bottles for a color care conditioner that mimic L'Oréal's copper-brown bottles for a shampoo and conditioner that smooth dry, coarse, unruly hair (conditions often found in color treated hair);

(iv) green bottles for shampoo and conditioner providing "extra body and volume" that mimic L'Oréal's green bottles for shampoo and conditioner that "boosts volume and body."

(v) gold bottles for a "soft moisturizing conditioner" that mimic L'Oréal's gold bottles for shampoo and conditioner that provide softness for dry, brittle hair.

A photograph of the Infringing Trade Dress is annexed hereto as Exhibit C.

29. Zotos also uses "PARK AVENUE NEW YORK CITY" on the Zotos Products, further mimicking the L'Oréal products and Skyscraper Trade Dress, which bear the federally registered trademark REDKEN 5TH AVENUE NYC. The display cases used by Zotos for the Zotos Products further copy and imitate L'Oréal's display cases which arrange the products so as to simulate the New York City skyline. Zotos also copies L'Oréal's New York City skyline theme by depicting a graphic of the New York City skyline on its bottles.

30. On information and belief Zotos is selling or seeking to sell its infringing Zotos Products in the same channels of trade and to the same consumers as targeted by L'Oréal. Like the L'Oréal products, the Zotos Products contained in the Infringing Trade Dress are sold to distributors nationwide, who then sell the Zotos Products to professional hair and beauty salons across the United States. On further information and belief the Zotos Products may also be sold by

distributors to beauty supply stores and online retailers across the United States, which then sell the Zotos Products to the general public at a retail price of between $5.99 and $6.99 per bottle.

### Zotos' Bad Faith

31. Zotos has acted willfully and in bad faith by using the Infringing Trade Dress, which is a clear and intentional copy of the Skyscraper Trade Dress.

32. This is not the first time Zotos has attempted to compete unfairly by trading on L'Oréal's good will.

33. Other hair care products marketed and sold by Zotos that use non-infringing trade dress demonstrate that Zotos knows how to design packaging and trade dress that do not infringe. On information and belief, Zotos has never previously used the distinctive bottle shape, color combinations, and text and design layout of the Skyscraper Trade Dress or conveyed the commercial impression of New York City and the New York City skyline image. The trade dress of Zotos' other hair care products do not share any of the design elements of the Skyscraper Trade Dress. There is no legitimate reason for Zotos to misappropriate the distinctive, source-identifying look L'Oréal has created.

### Likelihood of Confusion

34. The overall impression conveyed by the Infringing Trade Dress is likely to cause confusion with the Skyscraper Trade Dress. Given the striking similarity between them, there is likely to be initial interest confusion, confusion among hair salon customers who desire to purchase the L'Oréal products and who subsequently visit a salon or a supply store that carries the Zotos Products and mistakenly purchase one of the Zotos Products due to the Infringing Trade Dress, a mistaken belief that L'Oréal and Zotos are somehow connected, affiliated or related, or a belief that Zotos needed L'Oréal's permission to use the Infringing Trade Dress.

35. The likelihood of confusion is further exacerbated by the fact that hair care products are relatively low-cost items (less than $7.00 per bottle).

### Irreparable Harm

36. L'Oréal has spent considerable time, money, effort and resources developing the L'Oréal products sold in the Skyscraper Trade Dress that unmistakenly identifies L'Oréal and has, through its substantial effort and investment, built a successful product line that stands out and is distinguished from the competition by the Skyscraper Trade Dress in the highly competitive and crowded professional hair care market. L'Oréal's good name and reputation ride on each sale that attributes the quality of the purchased product to L'Oréal. Zotos' use of the Infringing Trade Dress has removed control over the quality of the products attributable to L'Oréal and has placed L'Oréal's reputation in the hands of Zotos, a competitor.

37. In marketing and selling the Zotos Products, Zotos has gone far beyond fair competition, and seeks to trade on and profit from L'Oréal's efforts and investments without using its own resources, investing its own time or money, or exerting any creative effort of its own. Zotos' research and development is no more than identifying the most commercially successful products produced by L'Oréal, creating knock-offs of those products and misappropriating L'Oréal's good will by infringing the Skyscraper Trade Dress. Absent an injunction, Zotos will benefit at the expense of L'Oréal's many years of investment, willingness to take risks and hard work.

38. *A fortiori*, should the Zotos Products be inferior to the L'Oréal products, the damage to L'Oréal's reputation and good will will be even more devastating.

## Count I
### Trade Dress Infringement, Unfair Competition and False Designation of Origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)

39. L'Oréal repeats and realleges paragraphs 1 - 38 as if fully set forth herein.

40. The unauthorized use in commerce by Zotos of the Infringing Trade Dress violates 15 U.S.C. § 1125(a) and constitutes (i) trade dress infringement; (ii) false designation of origin and/or (iii) unfair competition and is likely to cause confusion, mistake or to deceive consumers into believing that products of Zotos are sponsored by, endorsed by, or emanate from L'Oréal or otherwise are connected or affiliated with, or approved by L'Oréal.

41. Zotos' conduct is malicious, intentional and willful.

42. Zotos' acts will cause L'Oréal to suffer damage and injury to its business, reputation and goodwill and to sustain substantial loss of revenues and profits while unjustly enriching Zotos.

43. Unless enjoined by this Court, Zotos will continue the acts complained of herein and cause damage and injury to L'Oréal, all to L'Oréal's immediate and irreparable harm. L'Oréal has no adequate remedy at law.

## Count II
### Dilution and Injury to Business Reputation Under New York Statutory Law N.Y. Gen. Bus. Law § 360(l)

44. L'Oréal repeats and realleges the allegations contained in paragraphs 1 - 43 as if fully set forth herein.

45. Zotos' production, distribution, sale and promotion of the Zotos Products in the Infringing Trade Dress is likely to dilute, blur and detract from the distinctiveness of the Skyscraper Trade Dress and will cause damage to L'Oréal's business reputation.

46. Zotos' acts of dilution, unless restrained, will cause great and irreparable injury to L'Oréal and to the business and good will represented by the Skyscraper Trade Dress for which L'Oréal has no adequate remedy at law.

### Count III

### Trade Dress Infringement, Unfair Competition and Deceptive Acts and Practices Under New York Common and Statutory Law and The Law of Every State in which Zotos Does Business

47.  L'Oréal repeats and realleges the allegations contained in paragraphs 1 - 46 as if fully set forth herein.

48.  Zotos' acts constitute trade dress infringement, unfair competition and deceptive acts and practices under the statutory and /or common law of the State of New York and every state in which Zotos does business in that Zotos' actions are willful and with the intent to deceive and confuse, and are likely to cause confusion and deception, and to misappropriate the L'Oréal Skyscraper Trade Dress reputation and goodwill.

49.  Unless enjoined by this Court, Zotos' unauthorized use of the Infringing Trade Dress will cause irreparable harm, damage, and injury to L'Oréal, for which L'Oréal has no adequate remedy at law.

WHEREFORE, L'Oréal respectfully requests that this Court enter judgment in its favor and against Zotos as follows:

    a.  Preliminarily and permanently enjoining Zotos, its officers, agents, servants, employees, subsidiaries, parents, affiliates, related entities, suppliers, customers, successors, assigns and attorneys, and those acting in concert with, by or through them, from (i) using in any manner the Skyscraper Trade Dress or any derivation, variation or colorable imitation thereof that is likely to cause confusion therewith; (ii) in any way seeking to, directly or indirectly, misappropriate the good will and reputation associated with the Skyscraper Trade Dress; (iii) in any way inducing, directly or indirectly, the belief that the Zotos Products have been or are in any way connected or affiliated with or approved or endorsed by L'Oréal; (iv) otherwise infringing the Skyscraper Trade Dress; (v) competing unfairly with L'Oréal.

b.  Directing Zotos pursuant to 15 U.S.C. §§ 1116(a) or otherwise, to file with this Court and serve on L'Oréal within thirty (30) days of entry of any injunction, or such other time as directed by the Court, a report in writing and under oath setting forth in detail the manner and form in which Zotos has complied with the injunction.

c.  Ordering the recall and destruction of any marketing materials, advertisements, receptacles, displays and goods of Zotos, the manufacture or sale of which is enjoined pursuant to any injunction ordered by the Court, or that violate 15 U.S.C. § 1125(a).

d.  Ordering Zotos to pay L'Oréal:

(i)  All monetary damages sustained and to be sustained by L'Oréal as a consequence of Zotos' conduct complained of herein, including all of Zotos' profits resulting from infringement, all of L'Oréal's lost profits as a result thereof, and profits and gains of any kind resulting from Zotos' willful violations, in an amount to be determined at trial, and three times the amount thereof pursuant to 15 U.S.C. § 1117(a) and N.Y. Gen. Bus. Law § 349(h).

(ii)  L'Oréal's reasonable attorneys' fees, disbursements, costs and expenses in connection with this action, pursuant to 15 U.S.C. § 1117(a) and N.Y. Gen. Bus. Law § 349(h).

(iii)  Punitive damages.

e.  Awarding L'Oréal such other and further relief as this Court deems just and proper.

## Jury Demand

L'Oréal hereby demands a jury trial on all issues entitled to be tried to a jury.

Dated:  New York, NY
        April 18, 2008

Respectfully Submitted,

PAUL, HASTINGS, JANOFSKY & WALKER LLP

*/s/ Robert L. Sherman*

By:  Robert L. Sherman (RS 5520)
     Margarita Bejerano (MB 5497)
     Lisa Willis (LW 5704)
     75 East 55th Street
     New York, NY 10022
     (212) 318-6000 (telephone)
     (212) 318-6847 (facsimile)

Attorneys for Plaintiffs

L'Oréal U.S.A. Creative, Inc. and
L'Oréal USA, Inc.

# Exhibit A





